UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN INFERTILITY OF NEW
YORK, P.C.,

                              Plaintiff,

          - against -

DEEP BLUE HEALTH NEW ZEALAND
LTD.,

                              Defendant.

**ORDER**

17 Civ. 5666 (PGG) (BCM)

PAUL G. GARDEPHE, U.S.D.J.:

          Plaintiff American Infertility of New York, P.C. brings this patent infringement

action against Defendant Deep Blue Health New Zealand Ltd.  (Cmplt. (Dkt. No. 1))  This Court

entered an Order of Default against Defendant (Dkt. No. 52) and referred this case to Magistrate

Judge Barbara Moses for an inquest on damages.  (Dkt. No. 51)  Judge Moses issued a Report

and Recommendation ("R&R") in which she recommends that Plaintiff be awarded $1.00 in

nominal damages and $4,272.60 in costs.  (R&R (Dkt. No. 59) at 22)  Judge Moses also

recommends that Defendant be permanently enjoined from infringing on U.S. Patent No.

8,067,400 (the "'400 Patent").  (Id.)  For the reasons stated below, the R&R will be adopted in its

entirety.

**BACKGROUND**

I.      **FACTS[1]**

          On November 29, 2011, the U.S. Patent and Trademark Office issued the '400

---

[1]  The parties have not objected to Judge Moses' recitation of the alleged facts.  Accordingly, the
Court adopts her account of the facts in full.  See Silverman v. 3D Total Solutions, Inc., No. 18
CIV. 10231 (AT), 2020 WL 1285049 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not

Patent, titled "Androgen Treatment in Females," to Plaintiff.  (Cmplt. (Dkt. No. 1) ¶ 10)  The '400 Patent is "generally directed to a method for improving the quality of embryos, increasing pregnancy rates, and reducing miscarriage rates by administrating an androgen."  (Id. ¶ 12)  Claim 1 of the '400 Patent is a "method of decreasing aneuploidy rates in human embryos comprising administering androgen to a female for at least two months."  (Id. ¶ 19)  Claim 3 is a "method according to claim 1, wherein said androgen is dehydroepiandrosterone [("DHEA")]."  (Id. ¶ 20)  Claim 4 is a "method according to claim 3, wherein . . . [DHEA] administration comprises between 50 and 100 mg per day."  (Id. ¶ 21)  Claim 6 is a method of decreasing time to pregnancy and increasing pregnancy rates by administering the androgen for at least two months.  (Id. ¶ 22)

Plaintiff is a New York professional corporation and the assignee and owner of all rights, title, and interest in and to the '400 Patent, including the right to assert causes of action arising under the patent and the right to seek and recover for infringement.  (Id. ¶ 13)  Defendant is a New Zealand corporation that conducts business in the United States.  (Id. ¶ 2)

Plaintiff alleges that Defendant has infringed, and has induced others to infringe, on the '400 Patent "by manufacturing, promoting, marketing, making, having made, using, importing, offering for sale, advertising, selling or otherwise making available, within the State of New York and elsewhere throughout the United States, products, including but not limited to DHEA 25mg (the Infringing Product), that contains dehydroepiandrosterone (DHEA) and are administered in accordance with the limitations of at least one claim of the '400 patent."  (Id. ¶ 5)

---

objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section. . . .").  Given Defendant's default, these facts are assumed to be true.  Idir v. La Calle TV, LLC, No. 19-CV-6251 (JGK), 2020 WL 4016425, at *2 (S.D.N.Y. July 15, 2020) ("In the event of a defendant's default, the plaintiff's properly pleaded allegations in the complaint, except those related to damages, are accepted as true.").

II.   **PROCEDURAL HISTORY**

Plaintiff commenced this action on July 26, 2017, asserting a claim of patent infringement in violation of 35 U.S.C § 271(a)-(b).  (Id. ¶ 34)  Deep Blue Health was served on March 9, 2018.  (Proof of Service (Dkt. No. 26))  On June 11, 2018, Judge Katherine Forrest – to whom this case was then assigned – issued an order noting that her chambers had received a "document via email" which "appear[ed] to be from [D]efendant's counsel."  (Dkt. No. 28) Judge Forrest refused to accept the document as "properly filed" because Defendant had not appeared in the case.  (Id.)

On July 16, 2018, at Plaintiff's request, the Clerk of Court issued a certificate of default against Defendant.  (Dkt. No. 41)  On August 20, 2018, Plaintiff moved for a default judgement.  (Dkt. No. 45)  On August 24, 2018, Judge Forrest directed Defendant to show cause – at a hearing scheduled for September 27, 2018 – why a default judgement should not be entered.  (Dkt. No. 46)

On September 20, 2018, this case was reassigned to this Court.  On October 5, 2018, this Court rescheduled the September 27 hearing for October 10, 2018.  (Order (Dkt. No. 49); Oct. 10, 2020 Tr. (Dkt. No. 55) at 2)  Defendant was served with the October 5, 2018 order (Dkt. No. 50), but did not appear at the October 10, 2018 hearing.  (Oct. 10, 2020 Tr. (Dkt. No. 55))  Instead, on October 10, 2018, Defendant submitted "Defendant's Submissions on the Application of the Law."  (Id. at 4)  Because no lawyer had appeared on behalf of Defendant, this Court ruled that the arguments in Defendant's submission could not be considered.  (Id. at 2-3)  The Court noted, however, that Defendant's submissions left "no question that effective service was made" and that Defendant "was on notice of these proceedings and has chosen not to appear."  (Id. at 4)

3

After the October 10, 2018 hearing, this Court issued an Order of Default against Defendant.  (Dkt. No. 52)  The same day, the Court referred the case to Judge Moses for an inquest on damages.  (Dkt. No. 51)

On December 11, 2018, Plaintiff submitted Proposed Findings of Facts and Conclusions of Law, seeking $10,000.00 in nominal damages, $24,250.00 in attorneys' fees, $19,250.00 in consulting fees, and $4,272.60 in costs.  (Proposed Findings of Facts and Conclusions of Law (Dkt. No. 57) ¶¶ 9, 13)  Plaintiff also seeks a permanent injunction enjoining Defendant from infringing on the '400 Patent.  (Id. ¶ 14)

On December 30, 2019, Judge Moses issued a 23-page R&R, in which she recommends granting the requested injunction and awarding $1.00 in nominal damages and $4,272.60 in costs but otherwise denying the requested relief.  (R&R (Dkt. No. 59) at 22)   The R&R notifies the parties that they have 14 days to file any objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  (Id. at 23)  The R&R further states that the "[f]ailure to file timely objections will result in a waiver of objections and will preclude appellate review." (Id. (emphasis omitted))  Neither side has filed objections to the R&R.

## DISCUSSION

## I.    LEGAL STANDARD

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Where a timely objection has been made to the magistrate judge's recommendations, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.

Where, as here, no objections are filed to a magistrate judge's R&R – despite clear warning that a failure to file objections will result in a waiver of judicial review – judicial review has been waived.  See Thomas v. Arn, 474 U.S. 140, 147-48 (1985); see also Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision." (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam))); see also Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally waives any further judicial review of the findings contained in the report.").

## II.   ANALYSIS

Even though the parties have waived their right to judicial review, the Court has nonetheless reviewed Judge Moses' R&R for clear error.  As discussed below, the Court finds no error – clear or otherwise – in Judge Moses' thorough and well-reasoned R&R.

### A.   Jurisdiction and Venue

#### 1.   Subject Matter Jurisdiction

As an initial matter, Judge Moses finds that the Court has subject matter jurisdiction over Plaintiff's claims.  (R&R (Dkt. No. 59) at 6)  This Court agrees.  Because Plaintiff sues under the Patent Act, 35 U.S.C. § 101, et seq., there is a federal question under 28 U.S.C. § 1331.

#### 2.   Personal Jurisdiction

Judge Moses next analyzes whether the Court has personal jurisdiction over Defendant.  (R&R (Dkt. No. 59) at 6)  For a federal district court to have personal jurisdiction

over a defendant, three requirements must be met:  (1) "'plaintiff's service of process upon the defendant must have been procedurally proper'"; (2) "'there must be a statutory basis for personal jurisdiction that renders such service of process effective'"; and (3) "'the exercise of personal jurisdiction must comport with constitutional due process principles.'"  (Id. at 6-7 (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012)))

Judge Moses correctly determined that all three criteria are satisfied here.  First, service of process was procedurally proper because Plaintiff served Defendant under § 387(1)(b) of New Zealand's Companies Act of 1933 by delivering a copy of the summons and complaint to the "'employee in charge of Defendant's office and who was designated by law to accept service of process for Defendant.'"  (Id. at 7 (citing Lester Decl. (Dkt. No. 45-1) ¶¶ 6-7 & Ex. 1 (copy of Companies Act § 387); Lester Decl. (Dkt. No. 32) ¶ 7; Proof of Service (Dkt. No. 26)))  Thus, Plaintiff's service of the summons and complaint complied with the Federal Rules.  (Id. (citing Fed. R. Civ. P. 4(h)(2) (permitting a foreign corporation to be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual"); Fed. R. Civ. P. 4(f)(2)(A) (permitting service to be effected on an individual "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction"))  Moreover, as Judge Moses found, there is "'no question'" that "'effective service was made'" and that Defendant had "actual notice of this lawsuit" given Defendant's submissions to Judge Forrest and to this Court.  (R&R (Dkt. No. 59) at 7-8 (quoting Oct. 10, 2018 Tr. (Dkt. No. 55) at 4)) see Romandette v. Weetabix Co., 807 F.2d 309, 311 (2d Cir. 1986) ("Rule 4 of the Federal Rules is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." (citation and internal quotation marks omitted))

Second, Judge Moses found that a statutory basis exists for personal jurisdiction. (R&R (Dkt. No. 59) at 8)  Defendant offered to sell the alleged infringing product to New York residents on its website (Cmplt. (Dkt. No. 1) ¶¶ 5-7, 23, 25, 28-29), and Plaintiff has submitted a receipt demonstrating Defendant's sale of the infringing product to a New York resident. (Receipt (Dkt. No. 45-3))  Because Defendant sold the infringing product in New York, Judge Moses reasonably concluded that the requirements of N.Y. C.P.L.R. §§ 302(a)(1)-(2) were satisfied.  (R&R (Dkt. No. 59) at 8-9 (citing Multiwave Sensor Inc. v. Sunsight Instruments, LLC, 2017 WL 1498058, at *5 (S.D.N.Y. Apr. 26, 2017) ("[C]ourts in this district have held that a tortious act of patent infringement occurs, for the purposes of CPLR § 302(a)(2), where products are distributed and infringing sales are made. . . . [B]ecause patent infringement occurs upon an offer to sell infringing products, the Court finds that Plaintiff has shown that the Court has personal jurisdiction over [Defendant] under section 302(a)(2) of the New York long-arm statute.") (internal citations and quotation marks omitted); Basquiat v. Kemper Snowboards, 1997 WL 527891, at *3 (S.D.N.Y. Aug. 25, 1997) ("[P]ersonal jurisdiction over Gardner may be predicated on either § 302(a)(1) because defendants have contracted to supply goods – namely, the infringing snowboards – within New York, or, alternatively, on § 302(a)(2) because defendants have committed a tortious act within the state.").

Third, Judge Moses determined that exercising personal jurisdiction will not offend due process considerations.  (R&R (Dkt. No. 59) at 9)  As Judge Moses observes, defendant's contacts with New York – including its offer to ship the infringing product to New Yorkers and its actual sale of the infringing product to a New York resident – constitute sufficient "minimum contacts" with New York for purposes of due process.  (Id.)  Further, the exercise of personal jurisdiction under these circumstances would not offend "'traditional

7

notions of fair play and substantial justice.'"  (Id. (quoting Multiwave Sensor, 2017 WL

1498058, at *5 (finding the exercise of personal jurisdiction to accord with due process where

"Plaintiff's claim for patent infringement against [defendant] directly relates to [defendant's]

offer to sell the allegedly infringing product in New York State")))

       Because all three criteria are satisfied, Judge Moses found that the Court has

personal jurisdiction over Defendant.  The Court agrees with the R&R in this regard and adopts

its findings.

### 3.     <u>Venue</u>

       Judge Moses also soundly concluded that venue lies in this District.  (R&R (Dkt.

No. 59) at 10)  "'[V]enue against an alien corporation is a function of whether the court has

personal jurisdiction over that corporation.'"  (Id. (quoting Sharp Corp. v. Hisense Elec., Co.,

2017 WL 9325873, at *3 (S.D.N.Y. Dec. 22, 2017)))  Because this Court has personal

jurisdiction over Defendant, venue is proper.

### B.    <u>Liability</u>

       As Judge Moses notes, for purposes of liability, "the district court must accept as

true all of the well-pleaded factual allegations in the complaint."  (R&R (Dkt. No. 59) at 10

(citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)))  "However, before entering a

default judgment, the Court is required to determine whether those factual allegations, taken as

true, establish a defendant's liability as a matter of law."  (Id. at 10-11 (citing Finkel, 577 F.3d at

84).

       To state a claim of patent infringement under 35 U.S.C. § 271(a), a plaintiff must

"'(i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly

infringed, (iv) state the means by which the defendant allegedly infringes, and (v) point to the

sections of the patent law invoked.'"  (Id. at 11 (quoting Bobcar Media, LLC v. Aardvark Event Logistics, Inc., 2017 WL 74729, at *3 (S.D.N.Y. Jan. 4, 2017)))  "Section 271(b), in turn, provides that '[w]hoever actively induces infringement of a patent shall be liable as an infringer.'"  (Id. (quoting 35 U.S.C. § 271(b)))

As Judge Moses observes, "Plaintiff alleges that it owns the '400 Patent; that [Defendant] infringed that patent by offering the Infringing Product for sale on its website and by 'advertising and instructing others to purchase, use and/or administer the infringing product in a manner that infringes' the '400 Patent; and that this conduct violates 35 U.S.C. §§ 271(a) and (b)."  (Id. (citing Compl. (Dkt. No. 1) ¶¶ 5, 7, 10-37))  Judge Moses concludes that these allegations, taken as true, establish Defendant's liability.  This Court agrees.

## C.  **Damages**

Plaintiff seeks an award of $57,722.60, consisting of (1) $10,000 in nominal damages; (2) $24,250 in attorneys' fees; (3) $19,250 in consultant fees; and (4) $4,272.60 in costs.  (Proposed Findings of Fact and Conclusions of Law (Dkt. No. 57) ¶¶ 9, 13)  Judge Moses recommends that this Court award $1.00 in nominal damages and $4,272.60 in costs, and that Plaintiff's request for monetary relief otherwise be denied.  (R&R (Dkt. No. 59) at 22)

### 1.  **Nominal Damages**

As Judge Moses notes, the "statute authorizing patent infringement damages provides only that 'the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'"  (Id. at 13 (quoting 35 U.S.C. § 284))  "'A reasonable royalty 'can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer[.]'"  (Id. (quoting Small v. Nobel

9

Biocare USA, LLC, 808 F. Supp. 2d 584, 587 (S.D.N.Y. 2011)))  The R&R observes that Plaintiff "presents none of these calculations, nor any information from which such calculations could be derived."  (Id.)  Instead, Plaintiff simply asks for $10,000 in nominal damages.  (Id.; Proposed Findings of Fact and Conclusions of Law (Dkt. No. 57) ¶¶ 9, 13)

Judge Moses found "limited authority, much of it quite old, providing that nominal damages may be awarded in patent infringement actions."  (Id. at 13-14 (citing Black v. Thorne, 111 U.S. 122, 124 (1884); Mayor, Aldermen & Commonalty of City of New York v. Ransom, 64 U.S. 487, 488 (1859); Am. Can Co. v. Goldee Mfg. Co., 31 F.2d 492, 493 (E.D.N.Y. 1927), aff'd, 31 F.2d 494 (2d Cir. 1929)))  However, Plaintiff cited "no authority" – and Judge Moses found none – "for the proposition that nominal damages can be awarded under 35 U.S.C. § 284 in a non-nominal amount, such as the $10,000 requested here."  (Id. at 14)

Judge Moses notes that "modern cases authorizing nominal damages under the Patent Act generally award significantly smaller amounts."  (Id. (citing Synthes USA, LLC v. Syntec Sci. (USA) Corp., 2012 WL 13014729, at *4 (C.D. Cal. Mar. 20, 2012) (awarding $100 in nominal damages on default); Trustees of Columbia Univ. in City of New York v. Roche Diagnostics GmbH, 272 F. Supp. 2d 90, 120 (D. Mass. 2002) ("I find that this infringement entitles Columbia to only one dollar of nominal damages.")))  The R&R points out that some courts have suggested that "damages exceeding $1 cannot be considered truly 'nominal.'"  (Id. at 15 (citing Carey v. Piphus, 435 U.S. 247, 267 (1978) (finding that plaintiffs may be entitled to recover nominal damages "not to exceed one dollar"); Birnbaum v. United States, 588 F.2d 319, 333 (2d Cir. 1978) (finding that without "actual damage, . . . only nominal damages of one dollar would have been proper"); Magnett v. Pelletier, 488 F.2d 33, 35 (1st Cir. 1973) (explaining that an award of $500 "cannot be properly regarded as nominal damages," and reducing nominal

damages award to $1.00)))

Consistent with the case law cited in the R&R – and in the absence of any factual or legal support for Plaintiff's requested $10,000 damages award – Judge Moses recommends that Plaintiff be awarded $1.00 in nominal damages.  (Id. at 15)

Plaintiff has not objected to this recommendation, and this Court finds no clear error in it.  Accordingly, the Court will award Plaintiff $1.00 in nominal damages.

### 2.      **Attorneys' Fees**

Judge Moses concludes that Plaintiff's request for attorneys' fees under 35 U.S.C. § 285 should be denied.  (R&R (Dkt. No. 59) at 15-19)  As Judge Moses notes, Section 285 permits the award of attorneys' fees only in "exceptional cases."  (Id. at 15)  "'[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'"  (Id. at 15-16 (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014)))

As Judge Moses observes, Plaintiff has not cited any facts that make this case "exceptional."  (Id. at 18-19)  Defendant's default – standing alone – is not "exceptional."  (Id. at 18 (citing Eagle Trading USA, LLC v. Crownwell, LLC, 2019 WL 1323993, at *3 (S.D.N.Y. Mar. 25, 2019) (concluding that plaintiff failed to "demonstrate[] that this is an 'exceptional case' that warrants attorneys' fees under section 285 of the Patent Act," notwithstanding the defendant's default)))

Because there is no basis to find that this case is "exceptional," the Court will adopt Judge Moses' recommendation, and Plaintiff's request for an award of attorneys' fees will be denied.

### 3.   <u>Consultant Fees</u>

Judge Moses recommends that Plaintiff's request for $19,250 in consulting fees also be denied.  (R&R (Dkt. No. 59) at 19)  Plaintiff seeks to recover fees it paid to Cobra Consulting Group, LLC for investigatory work and "claims analysis" of Defendant's patent infringement.  (Proposed Findings of Fact and Conclusions of Law (Dkt. No. 57) ¶ 12; Lester Aff. (Dkt. No. 57-1) ¶ 9)

Judge Moses equates these expenses with expert witness fees and finds that reimbursement of such expenses is "'not available under § 285,' and may only be awarded 'under the Court's inherent power to sanction fraud or abuse of the judicial process.'"  (R&R (Dkt. No. 59) at 19 (quoting <u>Funai Elec. Co. v. Daewoo Elecs. Corp.</u>, 593 F. Supp. 2d 1088, 1118 (N.D. Cal. 2009)))  "This is a separate and higher burden than establishing that a case is 'exceptional' for purposes of § 285."  (<u>Id.</u> at 20 (citing <u>Source Search Techs., LLC v. Kayak Software Corp.</u>, 2016 WL 1259961, at *8 (D.N.J. Mar. 31, 2016)))  Because this case is not "exceptional" under Section 285, Judge Moses rightly concludes that Plaintiff has not met this stricter standard.  (<u>Id.</u>)  Accordingly, Plaintiff's request for consultant fees will be denied.

### 4.   <u>Other Costs</u>

Judge Moses recommends that Plaintiff's request for $4,272.60 in costs be granted.  (R&R (Dkt. No. 59) at 20)  Plaintiff's costs consist of $3,750 for effecting service of process in New Zealand, a $400 filing fee, and $122.60 in miscellaneous postage, transportation, and transcript charges.  (<u>Id.</u>)  As the R&R states, these costs are both reasonable and authorized by Section 284, "which requires that the Court award costs '[u]pon finding for the claimant.'" (<u>Id.</u> (quoting 35 U.S.C. § 284)) <u>see also</u> <u>IPVX Patent Holdings, PVX Patent Holdings, Inc. v. Taridium, LLC</u>, 2014 WL 4437294, at *6 (E.D.N.Y. Aug. 6, 2014) ("The costs requested are for

long distance telephone usage, process service and other information services, as well as electronic database research charges. . . This amount is reasonable and compensable. . . .").  The Court agrees that Plaintiff is entitled to costs and adopts Judge Moses' recommendation that $4,272.60 in costs be awarded.

      **D.**      **Permanent Injunction**

      Judge Moses recommends that Plaintiff's request for a permanent injunction be granted.  (R&R (Dkt. No. 59) at 20-21)  A plaintiff seeking a permanent injunction must demonstrate:  "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

      Judge Moses determined that this four-part test was satisfied:

> I conclude that all four eBay factors favor entering a permanent injunction against Deep Blue Health.  "'[B]ecause the principal value of a patent is its statutory right to exclude,' courts have concluded that monetary damages are an inadequate remedy against future infringement."  ALAN Sportartikel GmbH [v. Ultra Fitness Equip., Inc.], 2011 WL 13305254, at *5 (E.D.N.Y. Feb. 10, 2011) (quoting Honeywell Int'l Inc. v. Universal Avionics Sys. Corp., 397 F. Supp. 2d 537, 546 (D. Del. 2005)).  Moreover, since plaintiff has been unable to quantify his actual damages, and since "there is serious doubt that [plaintiff] will be successful in collecting any monetary award" the Court does issue in this case, plaintiff's injuries are "likely irreparable."  Acticon Techs. v. Heisei Elecs. Co., 2008 WL 356872, at *5 (S.D.N.Y. Aug. 1, 2007), report and recommendation adopted, 2008 WL 356872, at *1 (S.D.N.Y. Feb. 5, 2008).  "The only hardships involved inure in favor of" plaintiff, and "the public interest in the enforcement of intellectual property rights warrants the issuance of injunctive relief as the only enforceable remedy."  Id. See also ALAN Sportartikel, 2011 WL 13305254, at *5 (recommending entry of a permanent injunction against a defaulted defendant in a patent infringement action).  I therefore recommend entry of a permanent injunction against Deep Blue Health, together with its officers, directors, agents, affiliates, subsidiaries, parents, employees, and any other persons and entities

acting in concert with them, forbidding them from infringing or inducing the infringement of the '400 Patent.

(R&R (Dkt. No. 59) at 21-22)  The Court finds no error – let alone clear error – in Judge Moses' analysis.  Accordingly, the Court will permanently enjoin Defendant from infringing on the '400 Patent.

### <u>CONCLUSION</u>

For the reasons stated above, Judge Moses' R&R is adopted in its entirety. Plaintiff is awarded $1.00 in nominal damages and $4,272.60 in costs.  Defendant and its officers, directors, agents, affiliates, subsidiaries, parents, employees, and any other persons and entities acting in concert with it are permanently enjoined from infringing or inducing the infringement of U.S. Patent No. 8,067,400.  The Clerk of Court is directed to enter judgment and to close this case.

Dated: New York, New York
        July 23, 2020                                SO ORDERED.

                                                    _____
                                                    Paul G. Gardephe
                                                    United States District Judge